UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE PETROBRAS SECURITIES LITIGATION

This Document Applies To:

*Dimensional Emerging Markets Value Fund, et al. v. Petróleo Brasileiro S.A – Petrobras*, No. 15-cv-2165 (JSR)

*Skagen, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-2214 (JSR)

*New York City Employees' Retirement System, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-2192 (JSR)

*Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-3733 (JSR)

*Aberdeen Emerging Markets Fund, et al. v. Petróleo Brasileiro S.A. – Petrobras*, No. 15-cv-3860 (JSR)

*Ohio Public Employees Retirement System v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-3887 (JSR)

*Central States Southeast and Southwest Areas Pension Fund v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-3911 (JSR)

*Washington State Investment Board v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-3923 (JSR)

*Aberdeen Latin American Income Fund Limited, et al. v. Petróleo Brasileiro S.A. – Petrobras*, No. 15-cv-4043 (JSR)

*NN Investment Partners B.V., et al.  v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-4226 (JSR)

*Aura Capital Ltd. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-4951 (JSR)

No. 14-cv-9662 (JSR)

**DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE INDIVIDUAL ACTION COMPLAINTS**

# TABLE OF CONTENTS

Page

I.   CERTAIN INDIVIDUAL PLAINTIFFS HAVE NOT
     ESTABLISHED STANDING ...................................................................1

II.  THE MTD OPINION REQUIRES DISMISSAL OF
     SEVERAL CLAIMS .........................................................................3

     A.   The Note Purchases Are Not Alleged to Be Domestic Transactions.....................3

     B.   The Individual Plaintiffs Lack Standing Under Section 12(a)(2)...........................5

     C.   Certain Claims Are Untimely Under the Relevant Statutes of
          Repose......................................................................................6

     D.   Certain Section 11 Claims Must Be Dismissed for Failure to Plead
          Reliance....................................................................................6

III. THE INDIVIDUAL PLAINTIFFS DO NOT PLEAD
     EYEBALL RELIANCE UNDER SECTION 18.............................................7

IV.  THE BRAZILIAN LAW AND STATE LAW CLAIMS
     SHOULD BE DISMISSED ................................................................9

V.   DEFENDANTS WERE NOT "STATUTORY SELLERS"
     UNDER SECTION 12 .....................................................................9

     A.   The Individual Plaintiffs Fail to Allege Any Underwriter
          Defendant is a "Statutory Seller"......................................................9

     B.   The Petrobras Defendants Were Not "Statutory Sellers" .....................................11

VI.  WSIB'S NEGLIGENT MISREPRESENTATION CLAIM
     FAILS ......................................................................................11

     A.   New York Law Governs WSIB's Negligent Misrepresentation
          Claim.....................................................................................11

     B.   The Negligent Misrepresentation Claim Fails Even Under
          Washington Law ......................................................................13

VII. HELMS WAS NOT A CONTROL PERSON..............................................14

CONCLUSION.........................................................................................15

i

**Page(s)**

**Cases**

Absolute Activist Value Master Fund Ltd. v. Ficeto,
677 F.3d 60 (2d Cir. 2012)................................................................. 4, 5

AHW Inv. P'ship v. Citigroup Inc.,
980 F. Supp. 2d 510 (S.D.N.Y. 2013)................................................. 12

Amusement Indus. v. Stern,
693 F. Supp. 2d 327 (S.D.N.Y. 2010)................................................. 11

Ashcroft v. Iqbal,
556 U.S. 662 (2009)........................................................................... 6, 10

City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.,
875 F. Supp. 2d 359 (S.D.N.Y. 2012)................................................. 14-15

City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,
752 F.3d 173 (2d Cir. 2014)............................................................... 3

City of Taylor Police & Fire Ret. Sys. v. W. Union Co.,
2014 WL 4799659 (D. Colo. Sept. 26, 2014)..................................... 2

Corlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch,
2013 WL 3762882 (S.D.N.Y. July 18, 2013) ..................................... 1

Cromer Fin. v. Berger,
137 F. Supp. 2d 452 (S.D.N.Y. 2001)................................................. 12

Griffin v. PaineWebber, Inc.,
2001 WL 740764 (S.D.N.Y. June 29, 2001) ...................................... 10, 11

In re Am. Bank Note Holographics Sec. Litig.,
93 F. Supp. 2d 424 (S.D.N.Y. 2000)................................................... 10

In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.,
995 F. Supp. 2d 291 (S.D.N.Y. 2014)................................................. 8

In re BioScrip, Inc. Sec. Litig.,
2015 WL 1501620 (S.D.N.Y. Mar. 31, 2015), reconsideration denied 2015 WL 3540736
(S.D.N.Y. June 5, 2015)...................................................................... 10

In re Initial Pub. Offering Sec. Litig.,
241 F. Supp. 2d 281 (S.D.N.Y. 2003) ................................................ 6

In re Petrobras Sec. Litig.,
__ F. Supp. 3d __, 2015 WL 4557364 (S.D.N.Y. July 30, 2015)........................................ 5, 11

In re UBS AG Sec. Litig.,
2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)........................................................ 5, 10

In re Vivendi Universal, S.A. Sec. Litig.,
605 F. Supp. 2d 570 (S.D.N.Y. 2009)................................................................ 2

Int'l Fund Mgmt., S.A. v. Citigroup Inc.,
822 F. Supp. 2d 368 (S.D.N.Y. 2011)............................................................... 8

Intellivision v. Microsoft Corp.,
2008 WL 3884382 (S.D.N.Y. Aug. 20, 2008)........................................................ 12

La Luna Enters. v. CBS Corp.,
74 F. Supp. 2d 384 (S.D.N.Y. 1999)................................................................ 12

Northumberland Cty. Ret. Sys. v. Kenworthy,
2013 WL 5230000 (W.D. Okla. Sept. 16, 2013) ................................................... 10

Perry v. Duoyuan Printing, Inc.,
2013 WL 4505199 (S.D.N.Y. Aug. 22, 2013)....................................................... 10

Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.,
714 F. Supp. 2d 475 (S.D.N.Y. 2010)............................................................... 14

Sack v. Low,
478 F.2d 360 (2d Cir. 1973)......................................................................... 12

SEC v. Aronson,
2013 WL 4082900 (S.D.N.Y. Aug. 6, 2013)......................................................... 14

Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,
33 F. Supp. 3d 401 (S.D.N.Y. 2014)................................................................. 7

Sprint Commc'ns Co. v. APCC Servs., Inc.,
554 U.S. 269 (2008).................................................................................. 1

Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP,
612 F. Supp. 2d 267 (S.D.N.Y. 2009)............................................................. 11-12

United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen
Fin. Corp.,
2014 WL 7236985 (S.D. Fla. Nov. 7, 2014)......................................................... 2

**Rules and Statutes**

15 U.S.C. § 77k(a) .................................................................................. 15

15 U.S.C. § 77l(a)(2) ........................................................................................ 9, 11

**TABLE OF DEFINED TERMS**

2013 Notes                    Notes issued by PGF on May 13, 2013

<u>Aberdeen Emerging</u>           <u>Aberdeen Emerging Markets Fund, et al. v.
                              Petróleo Brasileiro S.A. – Petrobras</u>, No. 15-cv-
                              3860 (JSR)

<u>Aberdeen Lat. Am.</u>           <u>Aberdeen Latin American Income Fund Limited,
                              et al. v. Petróleo Brasileiro S.A. – Petrobras</u>, No.
                              15-cv-4043 (JSR)

ADRs                          American Depositary Receipts

<u>Aura Capital</u>               <u>Aura Capital Ltd. v. Petróleo Brasileiro S.A. –
                              Petrobras, et al.</u>, No. 15-cv-4951 (JSR)

Aura Capital                  The plaintiff in <u>Aura Capital</u>

CAC                           Consolidated Amended Complaint filed in the
                              Class Action on March 27, 2015, Dkt. No. 109

<u>Central States</u>             <u>Central States Southeast and Southwest Areas
                              Pension Fund v. Petróleo Brasileiro S.A. –
                              Petrobras, et al.</u>, No. 15-cv-3911 (JSR)

Class Action                  <u>In re Petrobras Securities Litigation</u>, No. 14-cv-
                              9662 (JSR)

Class MTD Br.                 Defendants' Memorandum of Law in Support of
                              their Motion to Dismiss the CAC, filed in the
                              Class Action on April 17, 2015, Dkt. No. 156

Class MTD Reply Br.           Defendants' Reply Memorandum of Law in
                              Support of their Motion to Dismiss the CAC,
                              filed in the Class Action on May 22, 2015, Dkt.
                              No. 169

Company                       Petrobras

Def. Br.                      Opening Brief

Defendants                    The Petrobras Defendants and the Underwriter
                              Defendants

| | |
|---|---|
| <u>Dimensional</u> | <u>Dimensional Emerging Markets Value Fund, et al. v. Petróleo Brasileiro S.A – Petrobras</u>, No. 15-cv-2165 (JSR) |
| Dimensional | The plaintiffs in <u>Dimensional</u> |
| <u>Dimensional</u> Am. Compl. | First Am. Compl., <u>Dimensional Emerging Markets Value Fund, et al. v. Petróleo Brasileiro S.A – Petrobras</u>, No. 15-cv-2165 (JSR) (S.D.N.Y. Sept. 11, 2015), ECF No. 19 |
| Dkt. No. | Docket number in the Class Action |
| DTC | The Depository Trust Company |
| Gerber Reply Decl. | Declaration of Jared Gerber in Support of Defendants' Joint Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Individual Action Complaints, dated October 5, 2015 |
| Helms | Theodore Marshall Helms |
| Individual Actions | <u>Aberdeen Emerging</u>, <u>Aberdeen Lat. Am.</u>, <u>Aura Capital</u>, <u>Central States</u>, <u>Dimensional</u>, <u>NN Investment</u>, <u>NY Funds</u>, <u>OPERS</u>, <u>Skagen</u>, <u>Transamerica</u> and <u>WSIB</u> |
| Individual Complaints | The complaints in the Individual Actions |
| Individual Plaintiffs | The plaintiffs in the Individual Actions |
| MTD Opinion | July 30, 2015 Opinion in the Class Action, Dkt. No. 194 |
| <u>NN Investment</u> | <u>NN Investment Partners B.V., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.</u>, No. 15-cv-4226 (JSR) |
| <u>NN Investment</u> Am. Compl. | First Am. Compl., <u>NN Investment Partners B.V., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.</u>, No. 15-cv-4226 (JSR) (S.D.N.Y. Oct. 1, 2015). ECF No. 22 |
| Notes | Notes issued by PGF on May 13, 2013 and March 10, 2014 |

| | |
|---|---|
| Notes Offerings | Offerings of the Notes which occurred on May 13, 2013 and March 10, 2014 |
| NY Funds | New York City Employees' Retirement System, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-2192 (JSR) |
| NY Funds | The plaintiffs in NY Funds |
| Opening Brief | Defendants' Joint Memorandum of Law in Support of Their Motion to Dismiss the Individual Action Complaints, filed on August 21, 2015, Dkt. No. 199 |
| OPERS | Ohio Public Employees Retirement System v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3887 (JSR) |
| OPERS | The plaintiff in OPERS |
| Opp'n | Opposition |
| Opp'n Ex. | Exhibit to the Declaration of Matthew L. Mustokoff in Support of the Individual Plaintiffs' Joint Opposition to Defendants' Motion to Dismiss the Individual Action Complaints, filed on September 18, 2015, Dkt. No. 214 |
| Opposition | Individual Plaintiffs' Joint Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Individual Action Complaints, filed on September 18, 2015, Dkt. No. 213 |
| Petrobras | Petróleo Brasileiro S.A. – Petrobras |
| Petrobras Defendants | Petrobras, PGF, and Helms |
| Petrobras Notes | Notes issued by PGF on May 13, 2013 and March 10, 2014 |
| PGF | Petrobras Global Finance B.V. |
| Reply Ex. | Exhibit to the Gerber Reply Decl. |
| Skagen | Skagen, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-2214 (JSR) |

| | |
|---|---|
| SLUSA | Securities Litigation Uniform Standards Act |
| <u>Transamerica</u> | <u>Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.</u>, No. 15-cv-3733 (JSR) |
| Transamerica | The plaintiffs in <u>Transamerica</u> |
| Underwriter Defendants | Banca IMI S.p.A., Banco Bradesco BBI S.A., Bank of China (Hong Kong) Limited, BB Securities Ltd., Citigroup Global Markets Inc., HSBC Securities (USA) Inc., Itau BBA USA Securities, Inc., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Mitsubishi UFJ Securities (USA), Inc., Morgan Stanley & Co. LLC, Scotia Capital (USA) Inc. and Standard Chartered Bank |
| <u>WSIB</u> | <u>Washington State Investment Board v. Petróleo Brasileiro S.A. – Petrobras, et al.</u>, No. 15-cv-3923 (JSR) |
| WSIB | The plaintiff in WSIB |

Defendants respectfully submit this reply memorandum of law in further support of their motion, pursuant to Rules 8, 9(b), 12(b)(1), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss claims asserted in the Individual Actions.[1]

## I.  CERTAIN INDIVIDUAL PLAINTIFFS HAVE NOT ESTABLISHED STANDING

The Opposition does not deny that the Aura Capital, NN Investment, and Dimensional complaints failed to adequately allege standing. See Opp'n 4-10. The plaintiffs in these actions adopted different cures for this defect; none succeed.

First, Aura Capital submitted two single-page assignments (Opp'n Exs. A, B), but for three reasons fails to meet its burden of establishing standing. See Def. Br. 5. First, neither assignment identifies any securities that are purportedly being assigned; they do not list any specific securities, and instead generically refer to "securities of [Petrobras]." Id. "Plainly, the fact that the [assignors] assigned something to [Aura Capital] is insufficient to confer standing." Corlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch, 2013 WL 3762882, at *2 (S.D.N.Y. July 18, 2013). Second, there is no explanation for the purported assignments,[2] and they are only signed by the assignor, not the assignee.[3] Third, Aura Capital has not even established what law applies to the assignments – much less that they are valid under it.

---

[1]    As set forth in Defendants' Opening Brief, to the extent an Underwriter Defendant has been named in an Individual Action, it has been named solely based upon having allegedly served as an underwriter for one or more of the offerings of Petrobras Notes. Furthermore, the Skagen action must be dismissed as against Bank of China (Hong Kong) Limited pursuant to Federal Rule of Civil Procedure 12(b)(5), as the Skagen plaintiffs failed to respond to Bank of China (Hong Kong) Limited's motion under this Rule.

[2]    See Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 292 (2008) (upholding assignments "made for ordinary business purposes," and that "[w]ere this not so, additional prudential questions might arise").

[3]    See id. at 272 (assignments deemed valid were signed by assignors and assignees).

Second, lacking an assignment, the Dimensional plaintiffs amended their complaint in an effort to fall within a "prudential exception" to standing. See Dimensional Am. Compl. The amendments consisted of bare legal assertions that the entities that actually made the investments "do not have legal personality separate from" the named plaintiffs or that the named plaintiffs "ha[ve] the exclusive authority to act on behalf of" the actual investors. Dimensional Am. Compl. ¶¶ 32-37. But legal conclusions are not entitled to the presumption of truth on a motion to dismiss. See Def. Br. 6. Moreover, many of the actual purchasers are organized under foreign law, Dimensional Am. Compl. ¶¶ 34-37, and neither the Dimensional pleading nor the Opposition offers any basis under such law to support the legal assertions made in the amended complaint. Indeed, there is a similar vacuum for the purchasing entities organized under domestic law. This stands in sharp contrast to the detailed evidence and affidavits found sufficient to establish the applicability of the prudential exception in the cases plaintiffs cite.[4]

Third, the NN Investment plaintiffs do nothing more than say that "in short order" they "will" file an amended pleading. See Opp'n 10. They offer no explanation why, if that is their intent, they did not do so – as did Dimensional – in the month they had to file the Opposition.[5]

---

[4]    See, e.g., In re Vivendi Universal, S.A. Sec. Litig., 605 F. Supp. 2d 570, 578 (S.D.N.Y. 2009) (citing expert report); City of Taylor Police & Fire Ret. Sys. v. W. Union Co., 2014 WL 4799659, at *5 (D. Colo. Sept. 26, 2014) (citing opinion letters); United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp., 2014 WL 7236985, at *3 (S.D. Fla. Nov. 7, 2014) (citing foreign law declaration).

[5]    On October 1, the eve of the due date of this brief, NN Investment filed an amended complaint. See NN Investment Am. Compl. Like the Dimensional amended complaint, it too solely makes legal assertions to address standing, NN Investment Am. Compl. ¶¶ 17-20, and fails for the same reasons. Indeed, the NN Investment plaintiffs do not even identify the relevant law that determines the rights of the plaintiffs or the entities who are alleged to have purchased the subject securities, much less legal authority thereunder supporting the legal assertions the amended complaint makes.

## II. THE MTD OPINION REQUIRES DISMISSAL OF SEVERAL CLAIMS

### A. The Note Purchases Are Not Alleged to Be Domestic Transactions

Unable to point to any well-pled allegation in their complaints that sufficiently shows they purchased the Petrobras Notes in domestic transactions, see Def. Br. 9-10, the Individual Plaintiffs resort to selectively quoting statements in the offering documents and asking the Court to assume from them that their purchases may have been domestic.

First, they assert that "[t]he Offering Documents for the 2013 and 2014 Offerings both state that the only public offering of the 2013 and 2014 Petrobras Notes would take place in the United States." Opp'n 11. In addition to U.S. public offerings, however, the offering documents make clear that these "Global Notes," Exs. A, B, would be offered to accredited investors (like the Individual Plaintiffs) in many countries in Asia, Europe and South America.[6] That several of the Individual Plaintiffs are U.S. entities does not cure the problem, Opp'n 11, because "a purchaser's citizenship or residency does not affect where a transaction occurs." City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173, 181 (2d Cir. 2014).[7] Moreover, the Skagen plaintiffs are not U.S. entities. See Def. Br. 10.

Second, the Individual Plaintiffs also argue that the Court should assume they made domestic purchases of Notes because the offering documents state those Notes "will be issued in book-entry form through facilities of The Depository Trust Company" and "will be settled using

---

[6]    See, e.g., Reply Ex. A at S-49, Reply Ex. B at S-74 ("The notes are offered for sale in the United States and other jurisdictions where it is legal to make these offers." (emphasis added)). See also Reply Ex. A at S-50-S-53, Reply Ex. B at S-74-S-78 (describing how offerings would be treated in several countries); Reply Ex. A at S-51, Reply Ex. B at S-76 (stating the Notes would "be offered in The Netherlands"); Reply Ex A at S-56-S-59, Reply Ex. B at S-80-S-84 (discussing tax implications of purchases in non-U.S. jurisdictions).

[7]    The offering documents also specifically identify several relevant broker dealers that are not authorized to sell securities in the U.S. See Reply Ex. A at S-48 (BB Securities Ltd. and Standard Chartered Bank); Reply Ex. B at S-72 (Bank of China (Hong Kong) Limited; BB Securities Ltd.; Bradesco Securities Inc.; and Banca IMI S.p.A.).

procedures applicable to United States corporate debt obligations in DTC's Same-Day Funds

Settlement System." Opp'n 12. Omitted from the Opposition is the offering documents' further

provision that the "Global Notes may also be deposited indirectly with Clearstream, Luxembourg

and Euroclear, as indirect participants of DTC," which are both non-U.S. entities. Reply Ex. A

at S-38-S-40; Reply Ex. B at S-62-S-64. Thus, the assertion that "all trading, including

secondary trading, clears and settles through DTC, a U.S. entity," Opp'n 12, is directly

contradicted by the very documents on which plaintiffs rely. See also Reply Ex. A at S-40;

Reply Ex. B at S-64 ("We understand that secondary market trading between Clearstream,

Luxembourg and/or Euroclear participants will occur in the ordinary way following the

applicable rules and operating procedures of Clearstream, Luxembourg and Euroclear."). As

such, the Individual Plaintiffs provide no basis to support a plausible inference that their

transactions were domestic.[8]

    Third, even had the Notes only been offered in the U.S., the Individual Plaintiffs have not

adequately pleaded that all of their purchases took place "in" the offerings. WSIB does not

argue that any of its purchases were "in" the offering, and therefore cannot even attempt to

establish a domestic transaction under this theory. The OPERS and Transamerica plaintiffs,

whose complaints contain only the bare assertion that they made purchases "in" offerings, Opp'n

11, fare no better, because such a "conclusory" allegation is insufficient to establish a domestic

transaction. Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 70 (2d Cir. 2012)

(rejecting bare allegation "that transactions 'took place in the United States'"). Danske's

argument that it made purchases on the offering date and the NY Funds plaintiffs' curious offer

---

[8]    In any event, even if all Notes transactions were settled through DTC, which they were
not, such clearing activities fail to establish that the transactions occurred in the U.S., including
because the location of clearing is irrelevant to the location that "irrevocable liability was
incurred or title was transferred," the touchstone under Absolute Activist. Def. Br. 10.

to provide transactional data <u>in camera</u> showing the same, Opp'n 11-12 & n.10, likewise fail to sufficiently plead a purchase in the initial offering. <u>See</u> <u>In re UBS AG Sec. Litig.</u>, 2012 WL 4471265, at *27 (S.D.N.Y. Sept. 28, 2012) (rejecting exhibit purporting to show purchases were made in initial offering because it did "not make clear whether [plaintiff] purchased the shares directly or in a secondary market").[9]

Finally, the Court should reject the Individual Plaintiffs' arguments because they do not rest on the facts the Second Circuit has held are required to plead a domestic transaction, including "concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money," <u>Absolute Activist</u>, 677 F.3d at 70, information which is uniquely within the Individual Plaintiffs' knowledge.

### B. The Individual Plaintiffs Lack Standing Under Section 12(a)(2)

The Individual Plaintiffs' defense of their standing to assert Section 12(a)(2) claims repeats many of their "domestic transactions" arguments, and fails for the same reasons. In particular, the conclusory assertions by the <u>OPERS</u> and <u>Transamerica</u> plaintiffs that they purchased "in" the offerings and the assertions by the <u>Skagen</u> and <u>NY Funds</u> plaintiffs that they could – but timely did not – re-plead to cure the defects in their pleadings, Opp'n 13, are inadequate. <u>See</u> <u>supra</u> at 4-5 & n.9. Moreover, the Individual Plaintiffs concede they cannot pursue purchases that were "<u>not</u> in the Offerings," Opp'n 13, and all such Section 12(a)(2) claims thus must be dismissed, including all claims asserted by WSIB, which does not even argue it made any Notes purchase in the offerings.

---

[9]     The named plaintiffs in the related Class Action made the same argument that they "sufficiently plead[ed] a Section 12(a)(2) claim" by identifying purchases "on the offering dates and at the offering price." <u>See</u> Dkt. No. 160 at 53. The Court therefore necessarily rejected this argument in dismissing those plaintiffs' Section 12(a)(2) claims. <u>See</u> <u>In re Petrobras Sec. Litig.</u>, __ F. Supp. 3d __, 2015 WL 4557364, at *13 (S.D.N.Y. July 30, 2015).

## C.   Certain Claims Are Untimely Under the Relevant Statutes of Repose

The Individual Plaintiffs concede they cannot bring claims outside the applicable statutes of repose.  <u>See</u> Opp'n 2 n.1.  Certain claims must therefore be dismissed to the extent they cover purchases outside the dates previously identified by Defendants.  <u>See</u> Def. Br. 13-14.

## D.   Certain Section 11 Claims Must Be Dismissed for Failure to Plead Reliance

The <u>Transamerica</u> and <u>NY Funds</u> plaintiffs do not deny that (a) they purchased 2013 Notes after the issuance of an earning statement covering 12 months after the effective date of the registration statement, or (b) the Court dismissed Section 11 claims in the related class action under similar circumstances.  <u>See</u> Def. Br. 14.  Instead, those plaintiffs argue that the Court erred in reaching that decision by not considering a non-controlling decision from 2003, which held "plaintiffs do not need to allege reliance" in that situation because Rule 8 "requires only notice pleading."  Opp'n 14 (citing <u>In re Initial Pub. Offering Sec. Litig.</u>, 241 F. Supp. 2d 281, 342 (S.D.N.Y. 2003) ("<u>IPO</u>")).  Plaintiffs cite no other case so stating, and <u>IPO</u> does not call the Court's holding into question:  <u>IPO</u> was issued prior to the Supreme Court's decisions in <u>Twombly</u> and <u>Iqbal</u>, which directly rejected the "notice pleading" approach that <u>IPO</u> applied. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009) (holding that a complaint does not satisfy Rule 8 "if its tenders naked assertions devoid of further factual enhancement").[10]  Thus, Plaintiffs were required to plead facts alleging their reliance on the registration statement.  Their failure to do so – indeed, their express disclaimer of any reliance allegations in connection with their Section 11 claims – requires dismissal.  <u>See</u> Def. Br. 14.

---

[10]    Indeed, the <u>IPO</u> court explicitly declined to dismiss the Section 11 claims for failure to plead reliance because the "Defendants d[id] not claim . . . that there are no set of facts under which plaintiffs could prevail."  241 F. Supp. 2d at 342.  As the Supreme Court stated in <u>Iqbal</u>, "<u>Twombly</u> retired [that] no-set-of-facts test."  556 U.S. at 670.

## III. THE INDIVIDUAL PLAINTIFFS DO NOT PLEAD EYEBALL RELIANCE UNDER SECTION 18

Under the "eyeball reliance" pleading standard regularly adopted by courts in this District for Section 18 claims, a plaintiff must (a) identify the specific statements in the specific documents that it relied on to make specific purchases <u>and</u> (b) specify how it relied on those specific misstatements in making specific purchases. <u>See</u> Def. Br. 16. The Individual Plaintiffs significantly understate the pleading burden set forth in those cases and ask the Court to apply diluted pleading standards applied by some courts in other Districts (including in cases that did not involve Section 18 claims). <u>See</u> Opp'n 14-21 & nn.15, 20-21. For several reasons, therefore, the Individual Plaintiffs' Section 18 claims must be dismissed.

<u>First</u>, none of the Individual Plaintiffs contends it has pleaded <u>how</u> it relied on any specific misstatement in making any specific purchase; instead, each simply ignores this requirement and claims it is sufficient to identify "specific representations" and the "date[s] or amount[s] of their purchases." <u>Id.</u> at 19-20. But "more is required" by the Section 18 decisions in this District than for "plaintiffs to specifically identify the statements on which they relied, . . . [rather, a complaint must allege] <u>how</u> plaintiffs relied." <u>Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.</u>, 33 F. Supp. 3d 401, 445 (S.D.N.Y. 2014).

<u>Second</u>, the Individual Plaintiffs' attempt to distinguish the prior decisions in this District on the ground that the plaintiffs in those cases "failed to plead . . . the date[s] or amount[s] of their purchases," Opp'n 20, fails. The Individual Plaintiffs do not cite any case in this District that held pleading such basic details is sufficient to plead eyeball reliance. In fact, Judge Ramos rejected a Section 18 claim in <u>Special Situations</u> even though that level of detail was pleaded. <u>See</u> Reply Ex. C (exhibits to <u>Special Situations</u> complaint listing plaintiffs' purchase dates and amounts). Moreover, that result is consistent with the decisions purportedly distinguished by the

Individual Plaintiffs, because merely listing <u>all</u> of the transactions a plaintiff made during the relevant period (as the few Individual Plaintiffs that provide this information do here) is identical to the "generic" assertion "that every . . . purchase of [defendant's] securities" by the plaintiff "was in reliance on the specific misrepresentations and omissions identified in the Complaint," which Judge Sweet rejected as "not sufficiently particularized" to plead reliance under Section 18. <u>In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.</u>, 995 F. Supp. 2d 291, 309 (S.D.N.Y. 2014). In any event, the complaints in <u>Transamerica</u>, <u>NY Funds</u>, <u>OPERS</u>, <u>Central States</u>, <u>WSIB</u> and <u>NN Investment</u> fail to provide even this basic information concerning trade dates and amounts, as the Opposition explicitly (for the first three) and implicitly (for the balance) concedes. <u>See</u> Opp'n 20 n.19.

<u>Third</u>, the Individual Plaintiffs' argument that they have adequately "identif[ied] the specific representations upon which they claim[] to have relied," <u>id.</u> at 19-20, also fails. The Individual Plaintiffs' broad allegations that, in connection with all of their purchases, they relied on Petrobras's "financial statements" (<u>Central States</u>, <u>WSIB</u> and <u>NN Investment</u>), "balance sheet, earnings, and the value of its assets" (<u>Transamerica</u> and <u>NY Funds</u>), statements "regarding [its] asset values and expenses" (<u>OPERS</u>), or representations concerning "net income, total assets, and PP&E" (<u>Aberdeen Emerging</u>, <u>Aberdeen Lat. Am.</u> and <u>Skagen</u>), Opp'n 15-18, are no different than alleging that they relied on all of the misstatements alleged in their complaints, which is plainly insufficient. <u>See</u> <u>Int'l Fund Mgmt., S.A. v. Citigroup Inc.</u>, 822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011) (rejecting allegation plaintiffs "read and relied upon [issuer's] Form 10-K, including the false financial statements and other statements alleged herein to be false or misleading" as "conclusory," "incredibly broad, alleging reliance . . . for indefinite periods of time").

## IV. **THE BRAZILIAN LAW AND STATE LAW CLAIMS SHOULD BE DISMISSED**

The Individual Plaintiffs concede that claims based upon Petrobras securities that trade in Brazil should be dismissed because they are subject to arbitration. See Def. Br. 15. Indeed, the plaintiffs in Central States, OPERS, NN Investment and WSIB state they "no longer seek[] to assert" them. Opp'n 2 n.1. The Brazilian law claims based on any ADRs and Notes traded in the U.S. are also without merit for the reasons explained in the expert affidavits Defendants submitted, Def. Br. 29-31, and the Individual Plaintiffs offer no response to them. Thus, it is not necessary for the Court to address whether, in addition, those claims are precluded by SLUSA, Def. Br. 19-22, an argument Individual Plaintiffs say they contest "only to preserve [it] for appeal." Opp'n 22 n.23. Finally, the plaintiffs in Central States and NN Investment "do not dispute" that SLUSA "likely pre-empts" their state law fraud claims. Id. at 22 n.22.

## V. **DEFENDANTS WERE NOT "STATUTORY SELLERS" UNDER SECTION 12**

### A. **The Individual Plaintiffs Fail to Allege Any Underwriter Defendant is a "Statutory Seller"**

There is no dispute that a plaintiff has standing to assert a Section 12(a)(2) claim only if it was solicited by or "purchas[ed] such security from" the defendant." 15 U.S.C. § 77l(a)(2); Def. Br. 22. But NY Funds and WSIB do not even allege purchases in the Notes Offerings, and OPERS and Transamerica allege only that some of their purchases were "in" the offerings, without pleading who sold the securities to them, or solicited their purchase. And their offer to amend to cure their pleading defect, Opp'n 25, is no substitute for compliance with the rules.

As a fallback, these plaintiffs contend that merely alleging purchases "in" firm commitment Notes Offerings necessarily means that all named Underwriter Defendants are section 12(a)(2) "statutory sellers." Opp'n 23-24. The argument rests on a false premise: these

are not class actions,[11] and in an individual action the plaintiff must allege the specific named underwriter defendant that passed title to it or directly solicited its purchases.  See Def. Br. 23-24; see also Iqbal, 556 U.S. at 678 (plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (emphasis added)).[12]  The Individual Plaintiffs do not dispute that they fail to meet this burden.  See Opp'n 23-24.  Further, as noted, the NY Funds and WSIB plaintiffs do not even allege that they purchased "in" a Notes Offering.

Thus, the Individual Plaintiffs' Section 12(a)(2) claims against the Underwriter Defendants should be dismissed because their complaints must identify the specific underwriter from which those plaintiffs purchased, and they do not.

---

[11] Indeed, all the cases on which Individual Plaintiffs rely involve class actions in which the putative class members comprise all purchasers in the offering.  See Northumberland Cty. Ret. Sys. v. Kenworthy, 2013 WL 5230000, at *7 (W.D. Okla. Sept. 16, 2013); In re Am. Bank Note Holographics Sec. Litig., 93 F. Supp. 2d 424, 439 (S.D.N.Y. 2000).  These cases merely reflect the holding of some courts that a class action claim may proceed so long as the complaint "'allege[s] that [at least one] member of plaintiff's purported class purchased at least one share from [an underwriter],'" even if the lead plaintiff did not.  Griffin v. PaineWebber, Inc., 2001 WL 740764, at *1 (S.D.N.Y. June 29, 2001).  But see In re UBS AG, 2012 WL 4471265, at *27 (no standing where complaint failed to allege any direct purchases by class action plaintiff from underwriter).

Plaintiffs also provide a cropped quotation from Perry, surgically omitting its reference to class actions:  That case merely held that "courts within the Second Circuit do not require that the putative class representative identify the specific underwriter from which it purchased shares."  Perry v. Duoyuan Printing, Inc., 2013 WL 4505199, at *12 (S.D.N.Y. Aug. 22, 2013) (emphasis added; underlined omitted from quotation at Opp'n 24); accord In re BioScrip, Inc. Sec. Litig., 2015 WL 1501620, at *29 (S.D.N.Y. Mar. 31, 2015), reconsideration denied 2015 WL 3540736 (S.D.N.Y. June 5, 2015) (cited at Opp'n 25 n.26).  Even in class actions, however, claims asserted by an individual plaintiff will be dismissed if the plaintiff does not allege that it purchased from, or was directly solicited by, the underwriter.  See Griffin, 2001 WL 740764, at *2 (dismissing claims by lead plaintiff but sustaining class action claims).

[12] The Individual Plaintiffs attempt to distinguish Merrill Lynch, DeMaria and Shain (Opp'n 24-25), but cannot dispute that those cases require a Section 12(a)(2) plaintiff to allege either (a) purchases from a specific defendant or (b) that it was directly solicited by a specific defendant.  The NY Funds, OPERS, Transamerica and WSIB complaints make no such allegations.  See Def. Br. 23-24.

## B. The Petrobras Defendants Were Not "Statutory Sellers"

The Individual Plaintiffs do not deny that neither Petrobras nor PGF ever sold Notes to them. Opp'n 25. Petrobras was not even the issuer of the Notes (only PGF was, see Opp'n Exs. C, D), and PGF sold them to underwriters, in firm commitment underwritings. Def. Br. 24-25.[13] Section 12(a)(2) makes clear that only "the person purchasing such security from" the defendant may bring suit thereunder. 15 U.S.C. § 77l(a)(2). In notable contrast, the sole opinion the Individual Plaintiffs cite is distinguishable: there the issuer "sold at least one . . . share to members of the plaintiff class pursuant to the Prospectus." Griffin, 2001 WL 740764, at *3.

## VI. WSIB'S NEGLIGENT MISREPRESENTATION CLAIM FAILS

### A. New York Law Governs WSIB's Negligent Misrepresentation Claim

WSIB "does not dispute" that its negligent misrepresentation claim is foreclosed by New York law. Opp'n 26. It argues instead that Washington law should apply because WSIB purportedly "suffered injury" there. Opp'n 27. But courts do not "blindly appl[y]" a "last necessary event" or "place of injury" test to determine choice of law where another state is "the overwhelming center of the events giving rise to the case, and that state has a strong interest in regulating the conduct performed within its borders." Amusement Indus. v. Stern, 693 F. Supp. 2d 327, 341 (S.D.N.Y. 2010). To the contrary, in these circumstances, New York courts consistently apply the law of the state where the tort "originated" and the acts in furtherance of the tort occurred, not where the plaintiff suffered injury. See id.; Thomas H. Lee Equity Fund V,

---

[13]    The Petrobras Defendants understand that, although the Court did not specifically address the arguments that issuers in firm commitment underwritings are not "statutory sellers" in the MTD Opinion, it did not accept them. See In re Petrobras, 2015 WL 4557364, at *13 n.6; see also Class MTD Br. at 40 & nn.40-41; Class MTD Reply Br. at 16-17.

L.P. v. Mayer Brown, Rowe & Maw LLP, 612 F. Supp. 2d 267, 284 (S.D.N.Y. 2009);[14] Cromer

Fin. v. Berger, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001); Def. Br. 25-26.[15]

WSIB also does not dispute that New York has a "strong 'interest in regulating its vast

securities industry,'" that applying the law of the place of injury in this context would "paralyze

actors in the securities markets, not regulate their conduct," Def. Br. 26 & n.31,[16] or that the

Notes were sold globally.  Rather, it contends that Washington law should apply because

"Defendants' wrongdoing originated . . . in Brazil."  Opp'n 28.  While the alleged payment

scheme may have occurred in Brazil, the actions giving rise to WSIB's negligent

misrepresentation claim (i.e., the alleged making of misrepresentations), to the extent WSIB

purchased in the United States, occurred in New York.  See Def. Br. 26 (citing WSIB Compl.

¶ 13).  Indeed, WSIB's complaint does not allege that any Defendant took any action in

---

[14]      As WSIB indicates, Thomas H. Lee noted that "the jurisdiction with the greatest interest is generally the jurisdiction in which the loss occurred."  Opp'n 26-27.  But the court went on to explain that "where the loss was suffered is not conclusive and does not trump a full interest analysis."  Thomas H. Lee, 612 F. Supp. 2d at 284.  Furthermore, it held that New York law applied – even though the plaintiff suffered investment loss elsewhere – because "the complaint, in its entirety, establishes that the overwhelming bulk of events surrounding the alleged negligent misrepresentation . . . occurred in New York."  Id.

[15]      WSIB's attempt to distinguish AHW Inv. P'ship v. Citigroup Inc., 980 F. Supp. 2d 510 (S.D.N.Y. 2013), fails because here, as in that case, the "allegedly deceptive acts" occurred in New York.  See Opp'n 28; WSIB Compl. ¶ 13.

[16]      WSIB relies (Opp'n 27) on inapposite cases.  Intellivision and La Luna involved representations made in one-on-one transactions, rather than in connection with worldwide public offerings of securities, and thus did not implicate New York's strong interest in regulating its securities markets.  See Intellivision v. Microsoft Corp., 2008 WL 3884382, at *5-6 (S.D.N.Y. Aug. 20, 2008); La Luna Enters. v. CBS Corp., 74 F. Supp. 2d 384, 389 (S.D.N.Y. 1999).  Moreover, in La Luna, and unlike here, "[t]he complaint [wa]s ambiguous as to precisely where defendants' allegedly fraudulent activity took place."  74 F. Supp. 2d at 389.  The La Luna plaintiff also alleged the defendant came to the plaintiff's home state and took actions that caused plaintiff injury.  Id.  Finally, Sack v. Low, 478 F.2d 360 (2d Cir. 1973), "rigidly followed the location of the loss to determine the statute of limitations pursuant to New York's borrowing statute, not to determine governing law pursuant to a comprehensive interest analysis."  AHW, 980 F. Supp. 2d at 523.

Washington State.  Moreover, even if the "center of the events giving rise to" WSIB's claim was

Brazil, Opp'n 28, that would hardly point to applying <u>Washington</u> law.  <u>See</u> Def. Br. 25-26.  If it

did, Defendants could face negligent misrepresentation claims under the laws of all 50 states and

even foreign countries.  <u>See</u> <u>id.</u> at 26 n.31.

### B. The Negligent Misrepresentation Claim Fails Even Under Washington Law

WSIB wrongly asserts that Defendants "concede[d]," Opp'n 26, that it states a negligent

misrepresentation claim under Washington law.  Recognizing (but not correcting) that error,

WSIB later contends that Defendants overstate a Washington Supreme Court opinion, asserting

that it did not "limit negligent misrepresentation strictly to the fiduciary context."  Opp'n 28 n.28.

But Defendants made no such contention.  Rather, they explained that a negligent

misrepresentation plaintiff must allege "'[s]ome type of special relationship' between the

parties," a proposition WSIB does not dispute.  Def. Br. 29 n.34 (quoting <u>Colonial Imps., Inc., v.

Carlton Nw., Inc.,</u> 121 Wash. 2d 726, 732 (Wash. 1993)); <u>see also</u> <u>id.</u> at 27.  WSIB tries to force

its allegations to meet that test, but cites no supporting authority, much less one involving facts

even remotely similar to those pleaded here.[17]  <u>See</u> Def. Br. 27, 29 & n.34.

WSIB's negligent misrepresentation claim should also be dismissed under Rule 9(b),

which indisputably applies.  <u>See</u> <u>id.</u> at 27.  WSIB's complaint does not (a) specify which

Defendant made what misrepresentations or omissions; (b) particularize who, on behalf of WSIB,

---

[17]     WSIB argues it has pleaded a special relationship because the relevant "facts" were
peculiarly within Defendants' knowledge.  Opp'n 28 n.28.  But its complaint alleges a sprawling
fraud purportedly known by "at least 25 Brazilian construction companies," "more than 50
government officials" and "some of the biggest names in Brazilian business."  <u>WSIB</u> Compl. ¶ 6.

actually read and relied on the alleged misstatements and omissions; or (c) allege any misrepresentation or omission whatsoever by any Underwriter Defendant.[18] See id. at 27-29.

## VII.   **HELMS WAS NOT A CONTROL PERSON**

The Individual Plaintiffs contend that Helms was a control person "of Petrobras" because "a corporate officer [who] signed a registration statement" controls the issuer for Section 15 purposes. Opp'n 29. However, as the Individual Plaintiffs acknowledge, id. at 30 n.32, this Court has already held that merely signing a registration statement does not establish control person liability because, "to make out a Section 15 'control person' claim (as opposed to a strict liability claim under Section 11 for someone who signed the [registration] statements . . .), plaintiffs must also allege . . . meaningful culpable conduct by an individual defendant beyond mere status as a director or officer." Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010) (Rakoff, J.). The Individual Plaintiffs provide no basis to reconsider that decision here.

The allegation that merely signing the registration statement made Helms a control person also fails because that act – signing the registration statement – is the precise conduct the Individual Plaintiffs assert makes Helms liable under Section 11. In other words, the conduct that forms those plaintiffs' "control-person claim against [Helms is] the same [conduct] that constitute[s] the primary violations committed by [Helms] himself." SEC v. Aronson, 2013 WL 4082900, at *9 (S.D.N.Y. Aug. 6, 2013) (Rakoff, J.). Such a pleading approach – which "does not allege any plausible alternative theory where defendants are not primary violators and yet can still be held liable on a secondary violation theory through controlling [the company]" – does not

---

[18]     It alleges only that the Underwriter Defendants "disseminated" certain registration statements, WSIB Compl. ¶¶ 50-62, and that the "Negligent Defendants" made false statements, id. ¶ 473, without specifying which Defendants or identifying any particular statement.

plead a claim.  City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp., 875 F. Supp. 2d 359, 375 (S.D.N.Y. 2012) (Rakoff, J.).

Moreover, even if the Individual Plaintiffs were correct that merely alleging a "corporate officer" signed a registration statement is sufficient to establish control person liability, the claims against Helms would still fail.  First, there is no allegation that Helms was ever a Petrobras officer.  Each of the four relevant complaints alleges he was the U.S. "authorized representative" of Petrobras; none alleges he was an officer of Petrobras.[19]  Second, as noted, Petrobras did not issue the relevant Notes; they were issued by PGF.  Opp'n Exs. C, D. Petrobras was simply a guarantor of them, and a guarantor is not among the parties who can be liable under Section 11.  See 15 U.S.C. § 77k(a).  Thus, even if as alleged Helms did control Petrobras, such control would not give rise to Section 15 liability for securities issued by PGF.

## CONCLUSION

For the foregoing reasons, Aura Capital should be dismissed in its entirety and certain claims in the other Individual Actions should be dismissed as indicated in the Opening Brief.

---

[19]     See OPERS Compl. ¶ 430; NY Funds Compl. ¶ 42; Transamerica Compl. ¶ 69.  In addition, the WSIB complaint (alone) asserts that Helms ran the Petrobras investor relations department "from the Company's New York office."  WSIB Compl. ¶ 42.

Dated: New York, New York
October 5, 2015

Respectfully submitted,

CLEARY GOTTLIEB STEEN &
  HAMILTON LLP

By:    s/ Mitchell A. Lowenthal

    Mitchell A. Lowenthal
    Lewis J. Liman
    Roger A. Cooper
    Elizabeth Vicens

    One Liberty Plaza
    New York, New York  10006
    (212) 225-2000

*Attorneys for the Petrobras Defendants*

SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP

By:     s/ Jay B. Kasner

    Jay B. Kasner
    Scott D. Musoff

    Four Times Square
    New York, New York  10036
    (212) 735-3000

*Attorneys for the Underwriter Defendants*